1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE PHOENIX INSURANCE COMPANY, a foreign insurer,<br><br>    Plaintiff,<br><br> vs.<br><br>VECA ELECTRIC & TECHNOLOGIES, LLC, a Washington Limited Liability Company; JSA INVESTMENT LLC, a Washington Limited Liability Company; JOSEPH R. AMEDSON and JANE DOE AMEDSON, individually and the marital community comprised thereof;<br><br>    Defendants. | No. 2:23-cv-944<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff The Phoenix Insurance Company (Phoenix) submits the following Complaint for Declaratory Relief.

## I.    INTRODUCTION

1.1    This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. Phoenix seeks a determination that it does not owe a duty to defend or indemnify VECA Electric & Technologies, LLC (VECA).

COMPLAINT FOR DECLARATORY RELIEF – 1

1.2    Phoenix further seeks a declaration that Phoenix is entitled to reimbursement for all defense fees and costs incurred in defending VECA, as well as its fees and costs in pursuing this action.

## II.    PARTIES

2.1    Plaintiff Phoenix is a foreign insurer organized under the laws of the state of Connecticut with its principal place of business in the state of Connecticut.

2.2    Defendant VECA is a Washington Professional Services Corporation, doing business in King County, Washington.

2.3    Defendant JSA Investment LLC (JSA) is a Washington Services Corporation, doing business in King County, Washington.

2.4    Defendant Joseph R. Amedson is a citizen of the State of Washington who resides in King County Washington.

2.5    Defendant Jane Doe Amedson is a citizen of the State of Washington who resides in King County Washington

## III.    JURISDICTION AND VENUE

3.1    This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and diversity amongst the parties is complete.

3.2    Venue is proper with this Court pursuant to 28 U.S.C. § 1391 as this case involves a claim for insurance coverage stemming from the alleged losses that occurred in Mason County, Washington.

## IV.    FACTS

**A.**    **Background Facts**

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

4.1     VECA Electric & Technologies, LLC is the Named Insured on the Phoenix Insurance Company Commercial Policy No. 2F449724 which was in effect between December 1, 2018, and December 1, 2019; December 1, 2019, and December 1, 2020; December 1, 2020, and December 1, 2021; and December 1, 2021, and December 1, 2022 (hereinafter, the "Subject Policies").

4.2      The Subject Policies include a general aggregate limit of $2,000,000, a completed operations aggregate limit of $2,000,000, and a per occurrence limit of $1,000,000.

4.3     On or about October 22, 2018, VECA and JSA entered into a Subcontractor Agreement, which called for VECA to furnish certain labor, services, equipment and materials for a work of improvement at 1709 Harbor Avenue SW, Seattle, WA 98126 (the "Property").

4.4     On or about October 12, 2020, VECA filed suit against JSA, Joseph R. Amedson, and Jane Doe Amedson (the "VECA Lawsuit").

4.5     The VECA Lawsuit alleges that during the course of VECA's performance, JSA requested additional work to be performed and agreed to an additional price.

4.6     The VECA Lawsuit arises out of JSA, Joseph R. Amedson, and Jane Done Amedson's alleged refusal to pay for the extra work performed and invoiced to JSA on December 19, 2019, and January 21, 2020.

4.7     On or about November 10, 2020, JSA, Joseph R. Amedson and Susan Raisi filed an Answer to and Counterclaim against VECA (the "JSA Counterclaim").

4.8     The JSA Counterclaim alleges that JSA wanted a fixed price for the work, and that VECA and JSA agreed to a firm price in January 2019.

4.9     The JSA Counterclaim further alleges that VECA worked at the Property from January through October 2019, and that JSA paid all presented invoices for that work.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

4.10    The JSA Counterclaim further alleges that VECA performed no significant work at the Property after October 2019.

4.11    The JSA Counterclaim alleges that on or about December 30, 2019, VECA presented an invoice which exceeded the agreed firm price and was accompanied by two proposed "change orders".

4.12    The JSA Counterclaim alleges that these "change orders" had not been approved by, or discussed with, JSA.

4.13    The JSA Counterclaim further alleges that on January 21, 2020, VECA wrote to JSA saying, "In regard to future mobilizations, we'll need to ensure we are in agreement with our Time & Materials contract, and all squared away on outstanding payments to get us back to a breakeven point on costs."

4.14    The JSA Counterclaim alleges that this was the first time that VECA informed JSA that VECA intended to charge on a time and materials basis rather than a fixed price basis.

4.15    The JSA Counterclaim further alleges that on January 21, 2020, VECA presented an invoice for an additional sum, allegedly based on work from August through December 2019.

4.16    The JSA Counterclaim further alleges that Joseph R. Amedson, representing JSA, met with representatives of VECA on March 4, 2020, to clarify that the contract was on a fixed price basis and inform VECA that the proposed change orders had not been approved.

4.17    The JSA Counterclaim further alleges that later on March 4, 2020, VECA representatives entered a locked part of the Property after business hours, without notice to or permission from JSA, and removed lighting fixtures purchased for the Property.

4.18    The JSA Counterclaim alleges that VECA used a duplicated key stamped "Do Not Duplicate" in order to gain access to the property.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

4.19    The JSA Counterclaim further alleges that on March 5, 2020, VECA recorded a lien claim against the Property that was untimely and invalid.

4.20    The JSA Counterclaim alleges that JSA retained a third-party electric company to review VECA's work, and that the electrician reported multiple code violations.

4.21    The JSA Counterclaim further alleges that the estimated cost to fix the code violations is $27,720 plus tax.

4.22    The JSA Counterclaim further alleges that VECA did not complete its agreed scope of work and that the estimated cost to complete VECA's work, other than correcting the code violations, is $76,413 plus tax.

4.23    The JSA Counterclaim further alleges that VECA refused to transfer the electrical permit for the Property to a new contractor, so JSA allegedly had to obtain a new permit for $5,325.

4.24    The JSA Counterclaim further alleges that VECA breached its contract with JSA through the actions described above and others.

4.25    The JSA Counterclaim further alleges that during the 2018 negotiations between JSA and VECA, JSA informed VECA that it was considering improvements to the building next door to the Property at 1715 Harbor Ave SW, Seattle, Washington.

4.26    The JSA Counterclaim further alleges that JSA requested that VECA investigate whether the existing power feed at the Property was enough to serve both the Property and the building next door.

4.27    The JSA Counterclaim further alleges that VECA stated the existing power feed was sufficient for both properties, and that JSA, relying on that representation, invested money into the neighboring property.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

4.28     The JSA Counterclaim further alleges that VECA's representations regarding the existing power feed were incorrect, that VECA was negligent in its representation, and that JSA lost a significant investment on the neighboring property as a result of the misrepresentation.

**B.     Defense Under Reservation of Rights**

4.29     Upon becoming aware of the JSA Counterclaim, Phoenix accepted defense pursuant to a full reservation of rights and issued a reservation of rights letter dated January 13, 2023.

4.30     In that letter, Phoenix informed VECA that Phoenix would seek reimbursement for defense costs incurred in the defense of claims that were determined not to be covered under the policies of insurance.

## V.     POLICIES OF INSURANCE

**A.     Identification of the Primary Policy**

5.1     Phoenix issued a commercial policy to VECA Electric & Technologies, policy number 2F449724, which was in effect between December 1, 2018, and December 1, 2019; December 1, 2019, and December 1, 2020; December 1, 2020, and December 1, 2021; and December 1, 2021, and December 1, 2022 (the "Subject Policies").

5.2     The 2018-2019 policy includes the Commercial General Liability Coverage Form CG0001 (Ed. 10-01).

5.3     The 2019-2020, 2020-2021, and 2021-2022 policies include the Commercial General Liability Coverage Form CGT100 (Ed. 2-19).[1]

---

[1] Both the Commercial General Liability Coverage Form CG0001 and the Commercial General Liability Coverage Form CGT100 are substantially similar, substantive differences will be noted below.

COMPLAINT FOR DECLARATORY RELIEF – 6

5.4     The Subject Policies carry a general aggregate limit of $2,000,000, a completed operations general aggregate limit of $2,000,000, and a per occurrence limit of $1,000,000.

**B.      Provisions of the Subject Policies**

5.5     The Subject Policies contains the following Bodily Injury and Property Damage Liability Insuring Agreement provisions:

**SECTION I – COVERAGES**

**COVERAGE   A  –  BODILY   INJURY   AND   PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)**     The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)**     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.**     This insurance applies to "bodily injury" and "property damage" only if:

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1**. of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1**. of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer.

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

COMPLAINT FOR DECLARATORY RELIEF – 8

**(3)**     Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.**     Damages because of "bodily injury" include damages claimed by any person or organization for care, loss or services or death resulting at any time from the "bodily injury".

CG T1 00 02 19

5.6     The Subject Policies contain the following definitions which are relevant to the above provisions:

**SECTION V – DEFINITIONS**

**17.**     "Occurrence" means

**a.**     An accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

…

**23.**     "Property damage" means:

**a.**     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

**b.**     Loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

…

**25.**     "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.**     An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

COMPLAINT FOR DECLARATORY RELIEF – 9

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

**b.**     Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

CG T1 00 02 19

5.7     The Subject Policies contain the following relevant exclusion for contractual liability:

**2.     Exclusions**

This insurance does not apply to:

…

**b.     Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)**     That the insured would have in the absence of the contract or agreement; or

**(2)**     Assumed in a contract or agreement that is an "insured contract", provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured will be deemed to be damages because of "bodily injury" or "property damage", provided that:

**(a)**     Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)**     Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in

COMPLAINT FOR DECLARATORY RELIEF – 10

which damages to which this insurance applies are alleged.

CG T1 00 02 19

    5.8    The Subject Policies contain the following definitions which are relevant to the above exclusion:

    **13.**    "Insured contract" means:

    …

    **f.**    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph **f.** does not include that part of any contract or agreement:

    **(1)**    That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    **(2)**    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)**    Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)**    Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

COMPLAINT FOR DECLARATORY RELIEF – 11

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

CG T1 00 02 19

5.9     The Subject Policies contain the following Damage To Property exclusion:

**j.     Damage To Property**

"Property damage" to:

…

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

…

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

CG T1 00 02 19

5.10    The Subject Policies contains the following definition which is relevant to the above exclusion:

**22.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and

COMPLAINT FOR DECLARATORY RELIEF – 12

arising out of "your product" or "your work" except:

**(1)**    Products that are still in your physical possession; or

**(2)**    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)**    When all of the work called for in your contract has been completed.

    **(b)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)**    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.**    Does not include "bodily injury" or "property damage" arising out of:

**(1)**    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)**    The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)**    Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

COMPLAINT FOR DECLARATORY RELIEF – 13

…

**31.** "Your work":

    **a.**    Means:

        **(1)**    Work or operations performed by you or on your behalf; and

        **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        **(2)**    The providing of or failure to provide warnings or instructions.

CG T1 00 02 19

    5.11    The Subject Policies contain the following Damage To Your Product exclusion:

    **k.**    **Damage To Your Product**

    "Property damage" to "your product" arising out of it or any part of it.

CG T1 00 02 19

    5.12    The Subject Policies contains the following definition which is relevant to the above exclusion:

    **30.**    "Your product":

    **a.**    Means:

        **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)**    You;

            **(b)**    Others trading under your name; or

COMPLAINT FOR DECLARATORY RELIEF – 14

        **(c)**    A person or organization whose business or assets you have acquired; and

     **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.**   Includes:

     **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

     **(2)**    The providing of or failure to provide warnings or instructions.

   **c.**   Does not include vending machines or other property rented to or located for the use of others but not sold.

CG T1 00 02 19

5.13    The Subject Policies contain the following Damage To Your Work exclusion:

   **l.**   **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

CG T1 00 02 19

5.14    The Subject Policies contain the following Damage To Impaired Property Or Property Not Physically Injured exclusion:

   **m.**   **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

COMPLAINT FOR DECLARATORY RELIEF – 15

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

CG T1 00 02 19

5.15    The Subject Policies contains the following definition which is relevant to the above exclusion:

**12.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

CG T1 00 02 19

5.16    The Subject Policies contain the following Non Cumulation of Each Occurrence Limit of Liability and Non Cumulation of Personal and Advertising Injury Limit amendment:

**AMENDMENT – NON CUMULATION OF EACH OCCURRENCE LIMIT OF LIABILITY and NON CUMULATION OF PERSONAL and ADVERTISING INJURY LIMIT**

This endorsement modifies insurance provided under the following:

COMPLAINT FOR DECLARATORY RELIEF – 16

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1.      Paragraph 5 of SECTION III – LIMITS OF INSURANCE, is amended to include the following:

Non cumulation of Each Occurrence Limit – If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Each Occurrence Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "occurrence".

CG D2 03 12 97

5.17    The Subject Policies contain the following Damage To Property Endorsement – Limited Coverage For Physical Injury To Certain Electrical Property.

**DAMAGE TO PROPERTY ENDORSEMENT – LIMITED COVERAGE FOR PHYSICAL INJURY TO CERTAIN ELECTRICAL PROPERTY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Electrical Property Liability Aggregate Limit      $100,000**

1.      The following is added to Exclusion **j.**, **Damage To Property**, in Paragraph **2.**, **Exclusions**, of **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

Paragraphs **(4)**, **(5)**, and **(6)** of this exclusion do not apply to "property damage" that is physical injury to any electrical:

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

**(a)**     Part;

**(b)**     Component;

**(c)**     Panel; or

**(d)**     Apparatus;

but only if such "property damage" is alleged in a claim or "suit" for which we pay damages because of "property damage" to which this insurance applies in the absence of this exception.

This exception to Paragraphs **(4)**, **(5)**, and **(6)** of this exclusion does not apply to any "property damage" that is loss of use of property.

**2.**     The following is added to **SECTION III – LIMITS OF INSURANCE:**

Subject to the General Aggregate Limit, the Electrical Property Liability Aggregate Limit shown in the Schedule of this endorsement above is the most we will pay under Coverage **A** for damages because of all "property damage" covered by Paragraph **1.** of this endorsement above.

Subject to the applicable aggregate limit, we will not pay more than the Each Occurrence Limit shown in the Declarations for the sum of:

**a.**     Damages under Coverage **A**, including damages covered by Paragraph **1**. of this endorsement above; and

**b.**     Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

CG D4 10 04 08

5.18     The Subject Policies contain the following Washington Changes – Defense Costs endorsement:

### WASHINGTON CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMPLAINT FOR DECLARATORY RELIEF – 18

…

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

…

A.   The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

    **1.**   Section **I** of the Commercial General Liability, Commercial Liability Umbrella, Electronic Data Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Medical Professional Liability, Railroad Protective Liability and Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

    …

Paragraph **B.** also applies to any other provision in the policy that sets forth a duty to defend.

B.   If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

IL 01 23 11 13

## VI.   THERE ARE ACTUAL JUSTICIABLE CONTROVERSIES

COMPLAINT FOR DECLARATORY RELIEF – 19

6.1     Phoenix incorporates by reference and realleges paragraphs 1.1 through 5.20 above as if fully set forth herein.

6.2     Actual and justiciable controversies exist as to whether Phoenix owes any defense and/or indemnity coverage to VECA under the Subject Policies with respect to the claims in the JSA Counterclaim.

6.3     The Subject Policies' insuring agreements provide coverage for sums and insured becomes legally obligated to pay because of "property damage" caused by an "occurrence" to which the insurance provided under the Subject Policies apply.

6.4     There is an actual and justiciable controversy whether some or all of the claims in the JSA Counterclaim are for "property damage" as that term is defined in the Subject Policies.

6.5     There is further controversy as to whether some or all of the claims were caused by an "occurrence" as that term is defined in the Subject Policies.

6.6     For coverage to apply under the Subject Policies, the "property damage" must occur during the policy period.

6.7     There is an actual and justiciable controversy whether some or all of the claimed "property damage" occurred outside the pertinent policy periods.

6.8     For coverage to apply under the Subject Policies, prior to the policy period, no insured and no "employee" may know about the "occurrence" leading to "property damage", in whole or in part.

6.9     There is an actual and justiciable controversy whether some or all of the "property damage" was known, in whole or in part, by VECA or its employees prior to inception of pertinent policy periods.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

6.10    The Subject Policies exclude coverage for "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

6.11    There is an actual and justiciable controversy whether VECA must pay damages for "property damage" by reason of the assumption of liability in a contract or agreement.

6.12    The Subject Policies exclude coverage for "property damage" to real property on which the insured or any contractors or subcontractors working directly or indirectly on the insured's behalf are performing operations, if the "property damage" arises out of those operations.

6.13    There is an actual and justiciable controversy whether some or all of the claims asserted in the JSA Counterclaim involve "property damage" arising out of VECA's operations.

6.14    The Subject Policies exclude coverage for "property damage" to any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

6.15    There is an actual and justiciable controversy whether some or all of the claims asserted in the JSA Counterclaim involve "property damage" to property that must be restored, repaired, or replaced because VECA's work was incorrectly performed.

6.16    The Subject Policies exclude coverage for "property damage" to "your product" arising out of it or any part of it.

6.17    There is an actual and justiciable controversy whether some or all of the claims asserted in the JSA Counterclaim involve "property damage" to VECA's product, arising out of it, or any part of it.

6.18    The Subject Policies exclude coverage for "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

6.19    There is an actual and justiciable controversy whether some or all of the claims asserted in the JSA Counterclaim involve "property damage" to VECA's work, arising out of it or any part of it and included in the "products-completed operations hazard."

6.20    The Subject Policies exclude coverage for "property damage" to "impaired property" or property that has not been physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition in the insureds product or work.

6.21    There is an actual and justiciable controversy whether some or all of the claims asserted in the JSA Counterclaim involve "property damage" to "impaired property" arising out of a defect, deficiency, inadequacy or dangerous condition in VECA's product or work.

6.22    The Subject Policies exclude coverage for "property damage" to "impaired property" or property that has not been physically injured, arising out of a delay or failure by the insured or anyone acting on the insured's behalf to perform a contract or agreement in accordance with its terms.

6.23    There is an actual and justiciable controversy whether some or all of the claims asserted in the JSA Counterclaim involve "property damage" to "impaired property" arising out of a delay or failure by VECA to perform a contract or agreement in accordance with its terms.

6.24    Pursuant to the non-cumulation provisions of the Policies, any payment by Phoenix under any policy for any "occurrence" will reduce the limit of each successive policy issued by Phoenix by the amount of any such payment for that "occurrence".

6.25    To the extent that a progressive loss is alleged, there is an actual and justiciable controversy as to whether any potential coverage available under the Policies would limit Phoenix's obligations to a single policy period.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

6.26    The Subject Policies limit liability to $100,000 for "property damage" that is physical injury to any electrical part, component, panel, or apparatus, but only if such "property damage" is alleged in a claim or "suit" for which Phoenix pays damages because of "property damage" to which the Subject Policies apply.

6.27    There is an actual and justiciable controversy whether some or all of the property damage claimed in the JSA Counterclaim involves property damage that is physical injury to any electrical part, component, panel, or apparatus.

6.28    There is further controversy as to whether the subject claims involve property damage to which the Subject Policies apply.

6.29    The Subject Policies provide that if, after Phoenix notified the insured in writing that there may not be coverage and reserving its rights, it is determined that none of the claims for which Phoenix has provided a defense or defense costs are covered under the Subject Policies, then Phoenix may seek reimbursement for defense costs it incurs defending such claims.

6.30    There is an actual and justiciable controversy whether Phoenix is entitled to reimbursement for defense costs incurred in defending VECA against the claims alleged in the JSA Counterclaim.

## VII.    FIRST CAUSE OF ACTION – DECLARATORY RELIEF

7.1    Phoenix is entitled to Declaratory Judgment in its favor, specifically including a judicial determination as to its defense and indemnity obligations to Defendant VECA under the policy of insurance issued by Phoenix for the claims arising from the contract for and work at the Property.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

7.2     Specifically, Phoenix is entitled to a declaratory judgment stating that it does not have a duty to defend VECA under the policy of insurance issued by Phoenix for the claims asserted in the JSA Counterclaim.

7.3     Phoenix is also entitled to a declaratory judgment that it does not have a duty to indemnify VECA under the policy of insurance issued by Phoenix for the claims asserted in the JSA Counterclaim.

7.4     Finally, Phoenix is entitled to a declaratory judgment that it is owed reimbursement of defense fees and costs incurred in defending VECA against the claims asserted in the JSA Counterclaim and fees and costs incurred in pursuing this action.

## VIII.   REQUEST FOR RELIEF

8.1     For a declaration of the rights and obligations of the parties under the Subject Policies.

8.2     For a declaration that Phoenix does not have a duty to defend VECA under the Subject Policies for any claims asserted in the JSA Counterclaim.

8.3     For a declaration that Phoenix does not have a duty to indemnify VECA under the Subject Policy for any claims asserted in the JSA Counterclaim.

8.4     For reimbursement of all defense fees and costs incurred by Phoenix in defending VECA against the claims made in the JSA Counterclaim pursuant to the Policy and Washington State law.

8.5     For a declaration that JSA Investment, Joseph R. Amedson, and Jane Doe Amedson are bound by this Court's decision.

8.6     For all pre-judgment and post-judgment interest as allowed by applicable law.

8.7     For all attorney fees and costs allowed by applicable statute and law.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

8.8     For any other and further relief as this honorable Court deems just and equitable.

DATED this 23rd day of June 2023.

LETHER LAW GROUP

*/s/ Thomas Lether*
Thomas Lether, WSBA #18089
*/s/ Eric J. Neal*
Eric J. Neal, WSBA #31863
1848 Westlake Avenue N, Suite 100
Seattle, WA 98109
P: (206) 467-5444/F: (206) 467-5544
tlether@letherlaw.com
eneal@letherlaw.com
*Counsel for The Phoenix Insurance Company*